UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DEMON MELANCON                                    CIVIL ACTION

VERSUS                                            NO. 16-2977

CARGILL INC., d/b/a GRAIN                         MAGISTRATE JUDGE
& OIL SEED SUPPLY CHAIN                           JOSEPH C. WILKINSON, JR.


## ORDER AND REASONS ON MOTION

Plaintiff, Demon Melancon, brings this employment discrimination action against

his former employer, Cargill, Inc., alleging race discrimination, racially hostile work

environment and retaliation in violation of Title VII, 42 U.S.C. § 2000e et seq., and 42

U.S.C. § 1981.  Complaint, Record Doc. No. 1.[1]  This matter was referred to a United

States Magistrate Judge for all proceedings and entry of judgment in accordance with 28

U.S.C. § 636(c) upon written consent of all parties.  Record Doc. No. 1-2.

On February 13, 2017, Cargill filed a Motion for Summary Judgment that is

supported by affidavits, verified exhibits and deposition transcripts.  Record Doc. No. 21.

Melancon, who has been proceeding pro se since his counsel was allowed to withdraw,

obtained several extensions of time both to obtain new counsel and to respond to the

motion.  Record Doc. Nos. 23-26.  The court twice advised plaintiff that his response

should include sworn affidavits, including his own, or other evidentiary materials that set

_____

[1]Plaintiff's claims under the Louisiana Employment Discrimination Law, La. Rev. Stat. §
23:301 et seq., were previously dismissed.  Record Doc. No. 1-1.

forth specific facts demonstrating that there is a genuine issue of material fact for trial in this case. Record Doc. Nos. 22, 35.

Melancon filed a timely memorandum in opposition to defendant's summary judgment motion, Record Doc. No. 36, which incorporates some exhibits from Cargill's motion, including two affidavits that plaintiff gave to the National Labor Relations Board ("NLRB") in connection with his post-termination charge that his union had arbitrarily refused to pursue his grievance against Cargill. Plaintiff submitted no other evidence. Defendant received leave to file a reply memorandum. Record Doc. Nos. 38, 39, 40.

On April 20, 2017, Melancon filed a motion entitled "Requests for Extension of Time," Record Doc. No. 30, which the court deferred in part insofar as it seeks an extension of the discovery deadline that lapsed on February 9, 2017. The court held that the deferred "part of the motion will be addressed as part of the court's overall assessment of all aspects of Fed. R. Civ. P. 56 when it determines the pending summary judgment motion." Record Doc. No. 35.

On the same date, plaintiff filed a "Motion to Compel Requested Information to Respond to Discovery Requests and Filed Memorandum of Summary Judgment." Record Doc. No. 31. He filed another "Motion to Compel to Order Defendant to Respond to Discovery Requests" a month later. Record Doc. No. 37. Cargill filed a timely memoranda in opposition to both motions. Record Doc. Nos. 34, 41.

On June 13, 2017, Melancon received leave to file a supplemental memorandum in opposition to defendant's summary judgment motion, which includes his statement of material facts, responds to defendant's statement of uncontested facts and cites to some of the exhibits in the record. Although he alleges in the opening paragraph of his statement of material facts that he has "first-hand knowledge of all statements," the statement is neither signed nor sworn, and he does not attach any affidavits, declarations under penalty of perjury or additional evidence. Record Doc. Nos. 42, 43, 44.

Having considered the complaint, the record, the submissions of the parties and the applicable law, IT IS ORDERED that plaintiff's "Requests for Extension of Time," "Motion to Compel Requested Information to Respond to Discovery Requests and Filed Memorandum of Summary Judgment," and "Motion to Compel to Order Defendant to Respond to Discovery Requests" are DENIED and that Cargill's motion for summary judgment is GRANTED, for the following reasons.

I.    PLAINTIFF'S MOTIONS

Plaintiff's partially deferred motion to extend the discovery deadline, Record Doc. No. 30, and his two motions to compel Cargill to produce information and written materials, Record Doc. Nos. 31 and 37, are denied. Melancon never properly served any discovery requests on Cargill. Thus, there are no responses to be compelled. Fed. R. Civ. P. 37(a)(3)(B)(iv). Because plaintiff's motions were filed more than two months after both the discovery deadline had passed and Cargill had filed its summary judgment

motion, the court construes plaintiff's motions as seeking more time under Fed. R. Civ. P. 56(d) to obtain facts to support his opposition to summary judgment.

Rule 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: . . . allow time to obtain affidavits or declarations or to take discovery." Melancon has submitted <u>no</u> affidavits or declarations to support the requested extension of time. "Plaintiff's failure to attach such an affidavit is sufficient grounds to deny [his] motion." <u>McDonald v. Kansas City S. Ry.</u>, No. 16-15975, 2017 WL 1709353, at *4 (E.D. La. May 3, 2017) (citing <u>Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.</u>, 788 F.3d 218, 226 (6th Cir. 2015); <u>Scotch v. Letsinger</u>, 593 F. App'x 276, 278 (5th Cir. 2014); <u>Leza v. City of Laredo</u>, 496 F. App'x 375, 377-78 (5th Cir. 2012)).

Even if the court considered the motions,

> the party filing the motion must demonstrate how additional discovery will create a genuine issue of material fact. In particular, the party opposing summary judgment must set forth a plausible basis for believing that <u>specified facts</u>, susceptible of collection within a reasonable time frame, probably exist and indicate <u>how the emergent facts, if adduced, will influence the outcome</u> of the pending summary judgment motion. That party must also have diligently pursued discovery.

<u>Jacked Up, L.L.C. v. Sara Lee Corp.</u>, 854 F.3d 797, 816 (5th Cir. 2017) (citations and quotations omitted) (emphasis added).

Melancon neither specifies what facts he seeks nor explains how those unspecified facts or additional discovery will influence the outcome of Cargill's summary judgment

motion.  In his opposition to the summary judgment motion, Melancon relies on facts that are largely within his own knowledge and/or contained in the exhibits submitted by Cargill, which include plaintiff's own deposition testimony and affidavits.  Defendant essentially argues in its motion that the competent summary judgment evidence shows that it terminated plaintiff's employment because he had a history of disciplinary problems, culminating with an incident on April 25, 2014 that led directly to Cargill's decision to fire him, and that plaintiff has no evidence to rebut those legitimate reasons.  Melancon denies that he committed the infractions that Cargill contends were the basis of its decision and argues that Cargill's motives were pretexts for discrimination and retaliation.  Plaintiff could have, but has not, submitted his own affidavit if additional facts within his knowledge are not in the current record.  All of the facts, allegations and evidence that he cites in his supplemental memorandum are already in the record.  Because "it appears that further discovery will not provide evidence creating a genuine issue of material fact," the court denies plaintiff's Rule 56(d) motions and proceeds to decide defendant's motion for summary judgment.  Id.

Additionally, Melancon did not pursue discovery diligently.  He propounded no discovery requests, took no depositions and never requested an extension of the discovery deadline during the ten months that this action was pending before the deadline lapsed.  "[T]he first time [he] sought judicial assistance in obtaining [discovery] was in response to [defendant's] summary judgment motion.  Under these circumstances, the district court

[does] not abuse its discretion by denying [plaintiff's] Rule 56(d) motion for a continuance." Id. (citation omitted).  Melancon's lack of diligence in pursuing discovery is an independent reason to deny his motions.

II.    CARGILL'S MOTION FOR SUMMARY JUDGMENT

A.    Standards of Review

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

> (1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> (2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
> (3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.

(4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact."  Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim.  Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011).  "[A] complete

failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." <u>Celotex</u>, 477 U.S. at 323; <u>accord</u> <u>U.S. ex rel. Patton</u>, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." <u>Edwards v. Your Credit, Inc.</u>, 148 F.3d 427, 432 (5th Cir. 1998); <u>accord</u> <u>Murray v. Earle</u>, 405 F.3d 278, 284 (5th Cir. 2005). "<u>We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts</u>." <u>Badon v. R J R Nabisco Inc.</u>, 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" <u>Nat'l Ass'n of Gov't Employees</u>, 40 F.3d at 713 (quoting <u>Anderson</u>, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in <u>any</u> case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); <u>accord</u> <u>Duron v. Albertson's LLC</u>, 560 F.3d 288, 291 (5th Cir. 2009).

B.    The Undisputed Material Facts

The competent summary judgment evidence establishes the following material facts, which are accepted as undisputed solely for purposes of the pending summary judgment motion. Cargill operates a grain elevator in Westwego, Louisiana, where it receives grain by barge and rail that is loaded onto barges and vessels for worldwide distribution. Cargill's personnel are primarily responsible for all grain handling operations, which include boarding vessels and operating equipment to move the grain.

Melancon, who is African-American, worked for Cargill as a cover handler from December 11, 2012, until he was fired on April 28, 2014. A cover handler's duties are typically performed during the barge unloading process. A cover handler inspects the barge to ensure that it is securely tied to the pilings, guides a cable to secure the barge and rigs chains to the barge covers for removal. Once the barge covers are removed, the Link Belt, a grain conveyor system, is used to unload the barge. A cover handler is responsible for attaching the Link Belt. Cover handlers are also tasked with various housekeeping and maintenance jobs.

For safety reasons, Cargill must know the location of its employees at all times. It is a violation of Cargill's safety policy for employees to leave their designated work area without a supervisor's permission. Cargill supervisors are responsible for walking around the facility to monitor its employees' work and ensure their compliance with Cargill's policies and procedures.

During the 14 months he worked for Cargill, Melancon received 12 reprimands for tardiness, unexcused absences, violations of policies and procedures, inappropriate behavior, unsatisfactory work and insubordination. Plaintiff, a member of International Brotherhood of Teamsters Local Union No. 270 (the "Union"), was never reprimanded or disciplined for asserting safety concerns to Cargill or filing grievances with the Union.

Cargill's Performance and Development Plan for Melancon for fiscal year 2013-2014, dated January 16, 2014, rated him "Below Expectations" in the Behavior Quadrant. Melancon's supervisor characterized plaintiff's behavior as lacking in accountability and "[u]nacceptable." Record Doc. No. 21-5 at p. 211, deposition Exh. M-21 attached to Defendant's Exh. D, deposition of Demon Melancon.

By mid-January 2014, plaintiff was on the verge of termination for excessive absenteeism under Cargill's progressive discipline policy. On January 2, 2014, he received a written warning for having been late on December 30, 2013. Because he had received previous warnings for tardiness, plaintiff was told that he would be suspended for three days if this type of incident occurred again. Record Doc. No. 21-3 at p. 9, Exh. Melancon 7 attached to Defendant's Exh. B, affidavit of Cargill's Office Administrator Cindy Savoie. Melancon was then suspended for three days on January 6, 2014 for having been late on January 2, 2014, and was warned that another incident would lead to a five-day suspension. Id. at p. 10, Exh. Melancon 8 attached to Defendant's Exh. B. He was suspended for five days on January 16, 2014 for having clocked in one minute late on

January 10, 2014 and was warned that termination would be the consequence for any additional incident.  Id. at p. 11, Exh. Melancon 9 attached to Defendant's Exh. B.

On March 24, 2014, Melancon received a written reprimand and verbal warning for Unsatisfactory Work Quality based on a March 19th incident in which his supervisor, Jason Garwood (Caucasian), found plaintiff outside his designated work area and not performing his assigned tasks.  Indicating that this had happened more than once, Garwood stated that "each time I went out to the [Link Belt] Demon was in the shack and not in his work area."  Record Doc. No. 21-2 at p. 16, Exh. Melancon 11 attached to Defendant's Exh. A, affidavit of then-Production Team Leader (now Plant Superintendent) Michael Bates.  Melancon prepared a grievance on March 20th, alleging in it and in his affidavits later given to the NLRB that Garwood was "harassing" him by "spying on him," watching him more closely than Garwood watched other coworkers and "checking his gate punches;" i.e., monitoring his entries and exits from the job site.  Melancon did not allege in these statements that the harassment was race-based.  Record Doc. No. 21-5 at p. 185, plaintiff's affidavit dated July 31, 2014, Exh. M-17 attached to Defendant's Exh. D, deposition of Demon Melancon; id. at p. 189, plaintiff's affidavit dated September 17, 2014, Exh. M-18 attached to Defendant's Exh. D; Record Doc. No. 21-2 at p. 15, grievance signed March 20, 2014, Exh. Melancon 10 attached to Defendant's Exh. A.

On March 25, 2014, Melancon received a written reprimand and written warning for Unsatisfactory Work Quality/Insubordination because he had refused to answer

Garwood's questions on March 24th, argued with Garwood regarding the location of plaintiff's rain gear, and was told to go home if he was not going to cooperate with Garwood. Garwood stated that "[t]his has been the third time in the last 10 days that [Melancon] has had unsatisfactory work or insubordinate behavior." Garwood noted that plaintiff had not been at his assigned work site on March 16, 2014, but was <u>not</u> written up for it, and received a written reprimand for the March 19th incident. Record Doc. No. 21-2 at p. 17, Exh. Melancon 12 attached to Defendant's Exh. A. Based on plaintiff's behavior and disciplinary record, he was warned that "[a]ny future acts of insubordination will result in termination of employment." <u>Id.</u>

Melancon then added a paragraph about the March 24th incident to his grievance that he had signed on March 20, 2014. He alleged in the new grievance and in his later affidavits that Garwood had harassed, discriminated and retaliated against him because of his prior grievance[2] and because another of his supervisors, Fred Hartley (African-American), had approved an excused absence for him on March 15, 2014. Melancon did <u>not</u> allege that Garwood's harassment was based on his race. Rather, plaintiff stated that Garwood was upset and had become more "hostile" since Hartley had approved plaintiff's excused absence. Record Doc. No. 21-5 at p. 185, Exh. M-17 attached to Defendant's Exh. D; <u>id.</u> at p. 189, Exh. M-18 attached to Defendant's Exh. D; Record Doc. No. 21-2 at p. 15, Exh. Melancon 10 to Defendant's Exh. A.

---

[2]It is not clear from the evidence whether the grievance was actually submitted before plaintiff supplemented it to reflect the March 25th reprimand.

Near the end of Melancon's scheduled shift on April 25, 2014, Hartley told him to continue working until Hartley could confirm there were enough employees to relieve plaintiff. According to Cargill's disciplinary documentation, Melancon ignored these instructions and, when Hartley told him that his premature departure could delay or stop operations, responded: "Whose fault is that?" According to Cargill's evidence, plaintiff left the job without his supervisor's permission, resulting in two more senior employees being forced to continue working. Exh. Melancon 13, termination letter dated April 30, 2014 from Cargill "Team Leaders" to Melancon, attached to Defendant's Exh. A. The next day, Cargill suspended plaintiff with pay for insubordination.

Bates (African-American) was a Production Team Leader and an upper-level supervisor of Melancon during all of plaintiff's employment. Bates investigated the April 25th incident, including interviewing eyewitnesses. His investigation revealed that Melancon had disregarded his supervisor's instructions and left work without permission or proper relief. Based on this investigation and Melancon's disciplinary record, Cargill terminated him effective April 28, 2014 for insubordination and leaving his job site without permission or proper relief. Id.; Record Doc. No. 21-2 at p. 4, Defendant's Exh. A, Bates affidavit at ¶¶ 27-29. Melancon was replaced by an African-American employee. Record Doc. No. 21-3 at p. 2, Defendant's Exh. B, Savoie affidavit at ¶¶ 9-10.

On May 1, 2014, Melancon filed a grievance with the Union regarding his termination. He denied having left his job before his relief arrived and stated that he had

clocked out only after he was relieved. He admitted that he did not tell Hartley he was leaving. He alleged that he had been terminated "unjustly," but did not mention racial harassment, discrimination or retaliation. Record Doc. No. 21-2 at p. 19, Exh. Melancon 14 attached to Defendant's Exh. A.

A grievance meeting was held on May 19, 2014, attended by Melancon, Bates, Hartley, Garwood, Cargill's then-plant manager, a human resources person, a Union steward and David Negrotto, the president of the Union local. Cargill maintained its termination decision at the meeting. Negrotto conducted an independent investigation into plaintiff's grievance and determined that Cargill had a legitimate reason to terminate Melancon. Negrotto agreed with Bates's conclusions that (1) Cargill's policy required Melancon to stay on the job site and (2) plaintiff left work on April 25, 2014 without proper relief or permission. Negrotto testified at his deposition that all of plaintiff's allegations of past harassment merely involved acts of supervision by Cargill managers. Based on Negrotto's investigation, the Union declined to arbitrate Melancon's grievance because it had no merit. Record Doc. No. 21-6, Defendant's Exh. E, deposition of David Negrotto, at pp. 12, 16, 18-21, 29-31; Defendant's Exh. A, Bates affidavit at ¶¶ 27-29.

Melancon filed a charge with the NLRB on June 20, 2014, alleging that the Union had arbitrarily refused to pursue his termination-related grievance. He gave the NLRB his own affidavits dated July 31 and September 17, 2014. Record Doc. No. 21-5 at pp. 180-99, Exhs. M-17 and M-18 to defendant's Exh. D, Melancon deposition. Negrotto also

provided the NLRB with his affidavit, confirming that he had investigated the grievance and concluded that Cargill had been justified in terminating Melancon.

In his affidavits, Melancon admitted that an employee was required to remain at his work area until properly relieved and that, near the end of his shift on April 25, 2014, Hartley had asked two cover handlers to remain on standby until a new crew arrived. Melancon stated that he spoke to Hartley by telephone that night and that Hartley said he had one possible relief cover handler, but Hartley did not say who that was. Plaintiff stated that a laborer, DeAndre Jackson, arrived at the job site about 11:00 p.m. and said he was there to work as a cover handler. Melancon could not recall whether Jackson said he was there to relieve plaintiff or someone else. Melancon averred that he left because Jackson had properly relieved him. He stated that he was able to exercise his option not to work overtime and to leave first because he was the most senior cover handler on the job. Although plaintiff did not tell Hartley that he was leaving, he said that it was not standard procedure to do so once he was properly relieved. Melancon stated that Bates and Hartley told him the next day that he was being suspended for having left work before his relief arrived. Plaintiff said he told Bates and Hartley that Jackson had relieved him, but they suspended him anyway. He received a voice message a few days later that he was terminated.

At the May 19, 2014 grievance meeting, plaintiff repeated his version of the events on April 25th and discussed his grievances regarding the warnings he had received in

March 2014. Melancon stated that Cargill's plant manager discussed plaintiff's disciplinary record at the meeting, particularly the March 19 and 24, 2014 incidents. Melancon denied that he had argued with Garwood or refused to work on March 24, and he alleged that his three-day suspension on January 6, 2014 was in retaliation for having made a previous safety complaint to Bates and Hartley. Record Doc. No. 21-5 at pp. 189-92, 194-95, 196-97, Exh. M-18 to Defendant's Exh. D.

C.      Title VII and Section 1981

Plaintiff brings claims for race discrimination, a hostile work environment and retaliation in violation of Title VII and 42 U.S.C. § 1981. "Title VII disallows discrimination in hiring or termination of an individual based on his race, color, religion, sex, or national origin." Jackson v. Dallas Cnty. Juvenile Dep't, 288 F. App'x 909, 911 (5th Cir. 2008) (citing 42 U.S.C. § 2000e-2(a)(1)).

"Section 1981 protects the right to enforce contracts without respect to race," Hall v. Cont'l Airlines, Inc., 252 F. App'x 650, 653 (5th Cir. 2007), and provides causes of action for racial discrimination, racially hostile work environment and retaliation. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004); Hill v. Cleco Corp., 541 F. App'x 343, 346 (5th Cir. 2013); Roberson v. Alltel Info. Servs., 373 F.3d 647, 651, 655 (5th Cir. 2004). Section 1981 claims are governed by the same standards as Title VII. Morris v. Town of Independence, 827 F.3d 396, 400 (5th Cir. 2016); Chen v. Ochsner Clinic Found., 630 F. App'x 218, 226 (5th Cir. 2015); Foley v. Univ. of Houston Sys., 355

F.3d 333, 340 n.8 (5th Cir. 2003). Thus, citations to Title VII law in the analysis below are equally applicable to plaintiff's claims under Section 1981.

Cargill argues that Melancon cannot establish a prima facie case of race discrimination, hostile work environment or retaliation. Alternatively, if plaintiff can establish a prima facie case of any of his claims, Cargill contends that it has produced evidence showing that it disciplined and terminated Melancon for non-discriminatory, non-retaliatory reasons and did not subject him to a racially hostile work environment, and that plaintiff has no evidence to rebut those reasons.

D. Race Discrimination

1. Prima facie case

Plaintiff's claim that he was disciplined and/or terminated because of his race is analyzed under the burden-shifting evidentiary framework created in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), in which plaintiff must first provide competent evidence of a prima facie case.

> [He] can establish a prima facie case for discrimination if he can show "that he (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." If a prima facie case for discrimination can be established, then the burden shifts to the [defendant] to rebut [plaintiff's] case by articulating a legitimate, nondiscriminatory reason for his termination. If the [defendant] present[s] such a reason, then the burden shifts back to [plaintiff] to show that the [defendant's] reasons for terminating his employment are not true, but are mere pretexts for discrimination, or that the reasons are true, but his race was a motivating factor.

Jackson, 288 F. App'x at 911 (citing McDonnell Douglas Corp., 411 U.S. at 802, 804-05) (quoting Bryan v. McKinsey & Co., 375 F.3d 358, 360 (5th Cir. 2004)) (footnote omitted); accord Turner v. Kan. City S. Ry., 675 F.3d 887, 892 (5th Cir. 2012).

The first three elements of Melancon's prima facie case of discrimination are undisputed. He is a member of a protected class, was qualified for the job and was subject to adverse employment actions when Cargill suspended him and terminated his employment. However, plaintiff has no evidence to establish the fourth prong: either that he was replaced by someone outside his protected class or that similarly situated employees outside the protected class were treated more favorably.

First, it is undisputed that Melancon was replaced by another African-American employee. Defendant's Exh. B, Savoie affidavit at ¶¶ 9-10. Second, Melancon testified that two white employees, Ricky Kemp and Bryan Kemp, made safety complaints, as plaintiff did, but were not disciplined for it, as plaintiff allegedly was. Record Doc. No. 21-5, Defendant's Exh. D, Melancon deposition at p. 68.

Melancon has proffered no evidence that he was disciplined for reporting safety issues. The competent summary judgment evidence shows that Cargill does not discipline employees for raising safety concerns, that plaintiff was suspended according to Cargill's progressive discipline policy for repeated tardiness and insubordination, and was terminated for insubordination and leaving the job without permission or proper relief. Defendant's Exh. A, Bates affidavit at ¶¶ 27-29, 33-34. Plaintiff testified that he reported

- 18 -

excessive grain dust to the panel operator on duty in early January 2014 and was suspended "approximately ten minutes" later. He believed that he was suspended because of his safety report, although he admittedly "was told I was being suspended for clocking in a minute late a week prior." Record Doc. No. 21-5, Defendant's Exh. D, Melancon deposition at pp. 28, 29. Melancon received a written warning on January 2, 2014, for being late on December 30, 2013; was advised that he would be suspended for three days if this type of incident occurred again; was suspended for three days on January 6, 2014 for being late on January 2, 2014; was warned that another such incident would lead to a five-day suspension; was suspended for five days on January 16, 2014 for being one minute late on January 10, 2014; and was warned that termination would be the consequence for any additional incident. Record Doc. No. 21-3 at pp. 9-11, Exhs. Melancon 7, 8 & 9 attached to Defendant's Exh. B, Savoie affidavit.

Melancon thus was not treated any differently than employees, such as Ricky and Bryan Kemp, who may also have reported safety issues and were <u>not</u> disciplined for it. Melancon's "[c]onclusional allegations . . . , speculation, improbable inferences, [and] unsubstantiated assertions" that he was suspended or terminated because of his safety report on January 16, 2014 "do not adequately substitute for specific facts showing a genuine issue for trial." <u>Dailey v. Whitehorn</u>, 539 F. App'x 409, 412 (5th Cir. 2013) (quotation omitted). Plaintiff's "subjective belief of discrimination . . . cannot be the basis

of judicial relief." <u>Delaval v. PTECH Drilling Tubulars, L.L.C.</u>, 824 F.3d 476, 480 (5th Cir. 2016) (quotation omitted).

In addition, plaintiff cannot satisfy the fourth prong of a prima facie case because Ricky and Bryan Kemp are <u>not</u> "similarly situated" employees.

> The "similarly situated" prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably under <u>nearly identical circumstances</u>. This coworker, known as a comparator, must hold the <u>same job or hold the same job responsibilities</u> as the Title VII claimant; must share[ ] the same supervisor or have his employment status determined by the same person as the Title VII claimant; and must have a <u>history of violations or infringements similar</u> to that of the Title VII claimant.

<u>Alkhawaldeh v. Dow Chem. Co.</u>, 851 F.3d 422, 426 (5th Cir. 2017) (quotations omitted) (emphasis added).

Melancon had a lengthier disciplinary history than either of the Kemps and was a cover handler, while the two Kemps were tractor drivers. Defendant's Exh. B, Savoie affidavit at ¶¶ 11-13; Defendant's Exh. A, Bates affidavit at ¶¶ 37-39. When the record reveals no "similarly situated" person, the court should grant defendant's summary judgment motion. <u>Williams v. Franciscan Missionaries of Our Lady Health Sys., Inc.</u>, No. 16-30728, 2017 WL 2210922, at *2 (5th Cir. May 18, 2017) (citing <u>Morris</u>, 827 F.3d at 401; <u>Willis v. Cleco Corp.</u>, 749 F.3d 314, 320 (5th Cir. 2014)).

Accordingly, because plaintiff cannot establish a prima facie case of discrimination, Cargill is entitled to summary judgment in its favor as a matter of law.

2. Legitimate non-discriminatory reason

Even if Melancon could establish a prima facie case, Cargill has met its burden to produce legitimate non-discriminatory reasons for its actions. "Defendant's burden is one of production, not persuasion . . . ." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000) (quotation omitted). Defendant "need not prove that it was actually motivated by its proffered reason. . . . The employer need only articulate a lawful reason, regardless of what its persuasiveness may or may not be." Joseph v. City of Dallas, 277 F. App'x 436, 439 (5th Cir. 2008) (quotations omitted). Cargill must merely set forth, through admissible evidence, "reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

Once Cargill articulates a lawful reason, the burden shifts to plaintiff to persuade the trier of fact that the defendant intentionally discriminated against him. Turner, 675 F.3d at 900. Thus, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." St. Mary's Honor Ctr., 509 U.S. at 507 (quotation omitted).

Cargill has produced competent evidence showing that it twice suspended plaintiff for tardiness after repeated warnings pursuant to its progressive discipline policy and that it terminated Melancon for insubordination and leaving his job site without permission or proper relief. The undisputed evidence shows that, in making its termination decision,

Cargill considered plaintiff's disciplinary history, including two documented incidents of unsatisfactory work quality and/or insubordination in the previous month, after which he had been warned that termination would be the next disciplinary step. Defendant's Exh. A, Bates affidavit at ¶¶ 27-29, 31. Bates investigated the April 25, 2014 incident and concluded, based on eyewitness interviews, that Melancon had disregarded his supervisor's instructions and left work without permission or proper relief. Negrotto, the Union president, conducted his own investigation and concluded that Cargill was justified in terminating Melancon.

"'The failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee.'" Wilson v. Exxon Mobil Corp., 575 F. App'x 309, 313 (5th Cir. 2014) (quoting Chaney v. New Orleans Pub. Facility Mgmt., 179 F.3d 164, 167-68 (5th Cir. 1999)). Contrary to plaintiff's arguments, Cargill need not produce additional evidence to support its disciplinary documentation, the sworn affidavits of Bates and Savoie or Negrotto's testimony. Cargill's proffered reasons shift the burden to Melancon to produce admissible, "substantial evidence that the employer's legitimate, nondiscriminatory reason for termination is pretextual," Delaval, 824 F.3d at 480 (quotation omitted), which means that he must offer evidence to show "that the defendant had a discriminatory intent or motive." Ricci v. DeStefano, 557 U.S. 557, 577 (2009) (quotation omitted).

### 3. Pretext for discrimination

Melancon argues that he was suspended in January 2014 for having reported a safety violation, rather than for repeated tardiness; was properly relieved on April 25, 2014; and did not commit insubordination or leave the job site without permission on that date. However, his mere "denial of wrongdoing, standing alone, is insufficient to create a fact issue." Reed v. Neopost USA, Inc., 701 F.3d 434, 440 n.4 (5th Cir. 2012) (citation omitted). The Fifth Circuit has repeatedly held that

> an employee cannot establish that an employer's reason for termination is pretexual [sic] simply by "disputing the truth of the underlying facts for that reason." Simply disputing the underlying facts "merely implies that an employer may have made a mistake in deciding to take action against an employee. Because even an incorrect belief that an employee's performance is inadequate qualifies as a legitimate reason to terminate an at-will employee," an employee must submit evidence to "support an inference that the employer had a [discriminatory or] retaliatory motive, not just an incorrect belief."

Coleman v. Jason Pharm., 540 F. App'x 302, 305 (5th Cir. 2013) (quoting Haverda v. Hays Cnty., 723 F.3d 586, 596 n.1 (5th Cir. 2013)) (emphasis added); accord Lemaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007). The court must "focus [its] attention on whether [defendant's] perception of [plaintiff's] performance, accurate or not, was the real reason for" the adverse employment action. Harris v. Miss. Transp. Comm'n, 329 F. App'x 550, 556 (5th Cir. 2009) (quotation omitted) (emphasis added). Melancon has produced no evidence to show a material fact issue that Cargill acted with discriminatory intent.

The competent evidence shows that Cargill investigated the events of April 25, 2014. Bates and Hartley were aware of Melancon's version of events when they met with him the next day. Bates interviewed other witnesses and found their statements more credible than plaintiff's. Cargill decided to terminate plaintiff based on the April 25th incident and his prior disciplinary history, which included two suspensions for excessive absenteeism, a rating of "below expectations" for his "unacceptable" behavior in his January 2014 annual evaluation, two acts of insubordination and/or poor work quality in March 2014 and an express warning that another incident would result in termination. Melancon again presented his versions of the April 25th incident and earlier events at the grievance meeting with his union representatives and Cargill managers on May 19, 2014. Cargill maintained its decision. Union president Negrotto conducted his own investigation and concluded that Cargill had been justified in terminating plaintiff.

Melancon relies in part on the decision of an administrative law judge ("ALJ") with the Louisiana WorkForce Commission, who granted plaintiff's appeal from Cargill's denial of unemployment compensation. Melancon testified at the ALJ's hearing that he had not been insubordinate. The ALJ found that Cargill's witness had no firsthand knowledge of the events constituting the alleged insubordination and that Cargill therefore failed to prove, for purposes of Louisiana unemployment compensation law, that Melancon was discharged for misconduct. Record Doc. No. 21-4 at pp. 51-52, Defendant's Exh. C, attachment 8(b) to plaintiff's supplemental responses to defendant's

requests for production, ALJ's decision dated July 17, 2014. Even if this unverified copy of a public record were admissible, Fed. R. Evid. 901(a)(7), the ALJ's decision is <u>not</u> competent evidence to show that Cargill acted with discriminatory intent.

The burdens of proof in this Title VII case are different from the burden of proof in plaintiff's appeal from a denial of unemployment compensation. As the ALJ's decision states, to avoid paying unemployment benefits, "the burden of proof is on the employer" to prove "by a preponderance of the evidence" that it discharged the claimant for misconduct, a burden that cannot be met by hearsay evidence. Record Doc. No. 21-4 at p. 52 (citing La. Rev. Stat. § 23:1601(2); <u>Fontenet v. Cypress Bayou Casino</u>, 964 So. 2d 1035, 1037 (La. App. 1st Cir. 2007); <u>Barber v. Adm'r, Ofc. of Emp't Sec.</u>, 664 So. 2d 844, 846 (La. App. 3d Cir. 1995)). The ALJ found that Cargill's only witness had not participated in the events leading to plaintiff's termination. Cargill therefore failed to carry its burden in the face of Melancon's denial that he had been insubordinate.

However, under <u>McDonnell Douglas</u> and its progeny, Cargill's only burden in this court is to <u>articulate</u>, through competent evidence, legitimate reasons for its actions which, if believed by the trier of fact, support a finding that unlawful discrimination was not the cause of the termination. Cargill has done so with affidavits and verified exhibits. Melancon now bears the ultimate burden to produce evidence that Cargill was actually motivated by discriminatory intent. The ALJ's findings are irrelevant to that issue.

"Our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions." Lemaire, 480 F.3d at 391. "Management does not have to make proper decisions, only non-discriminatory ones." Delaval, 824 F.3d at 480 (quotation omitted). "[C]orrect or not, we will not second-guess [defendant's] decision to disbelieve [plaintiff] absent a showing of actual [discriminatory] purpose." Harris, 329 F. App'x at 557 (citing Lemaire, 480 F.3d at 391). "Even if evidence suggests that a decision was wrong, [the court] will not substitute our judgment . . . for the employer's business judgment." Scott v. Univ. of Miss., 148 F.3d 493, 509 (5th Cir. 1998), abrogated on other grounds by Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72 (2000) (citation omitted).

Melancon has proffered only speculation and conclusory allegations, but no competent evidence, to rebut Cargill's legitimate non-discriminatory reasons for its actions. Accordingly, no genuine issue of material fact is presented as to plaintiff's race discrimination claim and defendant is entitled to summary judgment as a matter of law.

E.     Retaliation

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee . . . because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 58 (2006)

(quoting 42 U.S.C. § 2000e-3(a)); accord McCoy v. City of Shreveport, 492 F.3d 551, 561

n.28 (5th Cir. 2007). To prove retaliation, plaintiff bears the initial burden

> to produce evidence: (1) that he participated in an activity protected by Title
> VII, (2) that his employer took an adverse employment action against him,
> and (3) that there is a causal connection between the adverse employment
> action and the protected activity. This establishes the employee's prima
> facie case, and gives rise to an inference of retaliation. The burden then
> shifts to the employer to articulate a legitimate non-retaliatory reason for the
> adverse employment action. Once the employer articulates a legitimate,
> non-retaliatory reason for the adverse employment action, the burden shifts
> back to the employee to demonstrate that the employer's [stated] reason is
> actually a pretext for retaliation. In order to demonstrate pretext sufficient
> to defeat a motion for summary judgment, an employee must produce
> evidence that could lead a reasonable fact-finder to conclude that the adverse
> [employment] action would not have occurred "but for" the employee's
> decision to engage in an activity protected by Title VII.

Alkhawaldeh v. Dow Chem. Co., 851 F.3d 422, 427 (5th Cir. 2017) (quotations and

citations omitted).

Melancon cannot establish a prima facie case of retaliation because there is no

evidence that he engaged in any activity protected by Title VII or 42 U.S.C. § 1981.

Although "'an informal complaint may constitute protected activity for purposes of

retaliation claims,'" Amanduron v. Am. Airlines, 416 F. App'x 421, 424 (5th Cir. 2011)

(quoting Casna v. City of Loves Park, 574 F.3d 420, 427 (7th Cir. 2009)) (citing Hagan

v. Echostar Satellite, L.L.C., 529 F.3d 617, 626 (5th Cir. 2008); Gee v. Principi, 289 F.3d

342, 345 (5th Cir. 2002)), "'[c]omplaints] to employers that do not complain of conduct

protected by Title VII do not constitute protected activities under the statute.'" Williams

v. Racetrac Petroleum, Inc., No. 09-141-SCR, 2010 WL 2035728, at *2 (M.D. La.

May 20, 2010) (quoting Cavazos v. Springer, No. B-06-058, 2008 WL 2967066, at *7 (S.D. Tex. Aug. 8, 2008) (citing Burlington N., 548 U.S. at 58)); see Burlington N., 548 U.S. at 70 (The retaliation standard "effectively captur[es] those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination.") (emphasis added).

Melancon claims that Cargill retaliated against him for raising a safety concern and/or for filing grievances with the Union about disciplinary actions against him, but neither of these types of complaints are protected activity. "[C]omments [that] are not protected activity under Title VII. . . cannot serve as grounds for a Title VII retaliation action." Watkins v. Tex. Dep't of Crim. Justice, 269 F. App'x 457, 461-62 (5th Cir. 2008); accord Raby v. Westside Transit, 224 F. App'x 384, 385 (5th Cir. 2007) (citing Grimes v. Tex. Dep't of Mental Health, 102 F.3d 137, 140 (5th Cir. 1996)); Marquez v. Voicestream Wireless Corp., 115 F. App'x 699, 702-03 (5th Cir. 2004).

It is undisputed that Melancon neither reported race discrimination or a racially hostile work environment to any manager nor "complained that [he] had been disciplined in a discriminatory manner based upon [his] race . . . and requested that an investigation of [his] complaint be conducted." Amanduron, 416 F. App'x at 424. He did not mention any race discrimination, racially hostile work environment or retaliation for having complained about race discrimination in his pre- or post-termination grievances, charges filed with the NLRB, or affidavits given to the NLRB. He did not file a charge of

discrimination or retaliation with the Equal Employment Opportunity Commission until after he was terminated.

In the absence of any protected activity, Melancon cannot establish a prima facie case of retaliation. Accordingly, defendant is entitled to summary judgment in its favor on Melancon's retaliation claim.

F.     Hostile Work Environment

Melancon claims that his supervisors subjected him to a racially hostile work environment. He alleges that Garwood harassed him by "spying on him," watching him more closely than Garwood watched other coworkers and "checking his gate punches;" i.e., monitoring his entries and exits from the job site.

To establish this claim, plaintiff must show that he

(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

Minnis v. Bd. of Supervisors, 620 F. App'x 215, 220-21 (5th Cir. 2015) (quotation omitted) (citing Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 651 (5th Cir. 2012)).

"If the claim is that the supervisor harassed the employee, the plaintiff need not satisfy the fifth element." Caldwell v. Lozano, No. 16-20403, 2017 WL 2080269, at *5 (5th Cir. May 12, 2017) (citing Watts v. Kroger Co., 170 F.3d 505, 509 (5th Cir. 1999)).

Melancon has not produced any evidence to support the second, third or fourth elements of a prima facie case of hostile work environment. As to the second prong, he has no competent evidence that <u>any</u> harassment occurred. The evidence shows that he was disciplined for documented incidents of tardiness, poor work quality and insubordination. Given his poor attendance record and the "below expectations" rating of his behavior on his annual evaluation, as well as Cargill's safety policies, plaintiff's supervisors had good reasons to keep a close eye on his whereabouts and performance of assigned tasks. As Union president Negrotto testified, all of Melancon's allegations of harassment merely involved acts of supervision by Cargill managers. Record Doc. No. 21-6, Defendant's Exh. E, Negrotto deposition at pp. 12, 20.

"The types of job-related criticisms [plaintiff] complains of are unlikely to support a hostile work environment claim." <u>Brown v. Liberty Mut. Grp., Inc.</u>, 616 F. App'x 654, 657-58 (5th Cir. 2015) (citing <u>Kang v. Bd. of Supervisors</u>, 75 F. App'x 974, 976-77 (5th Cir. 2003)). A supervisor's use of harsh language, yelling at an employee, temporary changes to schedule and duty assignments, and careful monitoring of the employee's job performance, absent any other evidence of prohibited discrimination, do not support a hostile work environment claim. <u>Hiner v. McHugh</u>, 546 F. App'x 401, 407 (5th Cir. 2013); <u>Ellis v. Principi</u>, 246 F. App'x 867, 871 (5th Cir. 2007); <u>Bryan v. Chertoff</u>, 217 F. App'x 289, 294 (5th Cir. 2007); <u>Escalante v. Holder</u>, No. EP-09-CV-368-KC, 2011 WL

1528472, at *8 (W.D. Tex. Apr. 20, 2011) (citing Ellis, 246 F. App'x at 871-72; McConathy v. Dr. Pepper/Seven-Up Corp., 131 F.3d 558, 563-64 (5th Cir. 1998)).

As to the third prong of his prima facie case, Melancon has produced no evidence that the alleged harassment was based on race. "A hostile work environment claim . . . necessarily rests on an allegation that an employer has created a working environment heavily charged with . . . discrimination." Raj v. La. State Univ., 714 F.3d 322, 330-31 (5th Cir. 2013) (quotation omitted). To connect the disciplinary actions to his race, Melancon relies solely on the fact that his former supervisor, Garwood, is white. A mere difference in race, "[w]ithout more, . . . does not support a finding that [plaintiff] suffered race . . .-based harassment." Byrnes v. City of Hattiesburg, 662 F. App'x 288, 290-91 (5th Cir. 2016) (citing Hernandez, 670 F.3d at 652). In Melancon's grievance about the March 24, 2014 incident and in his affidavits, he alleged that Garwood harassed him because of his prior, non-race based grievance and because Garwood was upset that Hartley had approved plaintiff's excused absence. He did not allege that Garwood's harassment or discrimination was race-based. Melancon never complained of a racially hostile work environment while he was employed at Cargill and has produced no evidence of racial harassment. The lack of "any facts that link the alleged harassment with his race" means that he cannot establish a prima facie case of racially hostile work environment. Raj, 714 F.3d at 331; accord Byrnes, 662 F. App'x at 291; Minnis, 620 F. App'x at 221; Hernandez, 670 F.3d at 651; Ramsey, 286 F.3d at 268.

Finally, Melancon cannot show that the conduct of which he complains affected a term, condition or privilege of employment.

> For harassment to affect a term, condition or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." To determine whether harassment is so severe or pervasive that it alters the conditions of the plaintiff's employment, this Court considers a number of factors: "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating (or whether it is a mere offensive utterance), and whether it unreasonably interferes with the victim's work performance."

Buisson v. Bd. of Supervisors, 592 F. App'x 237, 245 (5th Cir. 2014) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

Disciplining an employee for performance issues, when consistent with the employer's policies, is not a hostile act. Tejada v. Travis Assoc. for the Blind, No. 1:12-CV-997-DAE, 2014 WL 2881450, at *5 (W.D. Tex. June 25, 2014), report & recommendation adopted, 2014 WL 4165370 (W.D. Tex. Aug. 7, 2014), aff'd, 617 F. App'x 325 (5th Cir. 2015) (citing Schroeder v. Greater New Orleans Fed. Credit Union, 664 F.3d 1016, 1024 (5th Cir. 2011)). An internal investigation of an employee's conduct is not sufficiently severe to alter a term, condition or privilege of employment. McGarry v. Univ. of Miss. Med. Ctr., 355 F. App'x 853, 858 (5th Cir. 2009) (citing Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 872-74 (5th Cir. 1999)). Melancon has not shown that any of the alleged conduct was so frequent, severe, physically threatening or humiliating to interfere unreasonably with his work performance. "Based on the totality

of the circumstances, the combination of alleged acts does not constitute a hostile work environment because [plaintiff] has not shown that the acts were 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" <u>Minnis</u>, 620 F. App'x at 221.

Plaintiff has not "come forward with more than speculation of unlawful harassment to survive summary judgment." <u>Byrnes</u>, 662 F. App'x at 291 (citing Ramsey, 286 F.3d at 269). Accordingly, Cargill is entitled to summary judgment in its favor as a matter of law on Melancon's hostile work environment claim.

<u>CONCLUSION</u>

For all of the foregoing reasons, defendant's motion for summary judgment is GRANTED and plaintiff's claims are DISMISSED WITH PREJUDICE, plaintiff to bear all costs. Judgment will be separately entered.

New Orleans, Louisiana, this ___14th___ day of June, 2017.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE